

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

**ENTERED**
**05/14/2015**

IN RE:                              §        CASE NO. 14-80173
                                    §        Chapter 11
GILES-JORDAN, INC.                  §

## ORDER CONFIRMING DEBTOR'S THIRD
## AMENDED CHAPTER 11 PLAN OF REORGANIZATION

On May 14, 2015, this Court held a hearing on confirmation and consideration of the Debtor's Third Amended Chapter 11 Plan of Reorganization (the "Plan"), submitted by GILES-JORDAN, INC. (the "Debtor"). Any capitalized terms in this Order, not specifically defined in this Order, shall refer to the defined terms in the Plan, or definitions referenced in the Third Amended Disclosure Statement (the "Disclosure Statement"). After consideration of the Disclosure Statement and the Plan, documentary evidence and the arguments of counsel and on the basis of the record in the above-referenced bankruptcy case,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:**

A.   **Requirements for Confirmation.** The Plan complies with all applicable provisions of the Code and applicable Bankruptcy Rules relating to confirmation, including the requirements of section 1129(a) and (b). The Debtor has demonstrated that the obligations of the Plan will be met under the terms of the Plan.

B.   **Approval of the Plan.** The Court finds, based on the evidence presented, that Classes 1, 2, 3, 4, and 5 are unimpaired. The Court finds that Classes 6 and 7 have voted to accept the plan pursuant to section 1126(c) and (d) of the Code.

**BASED ON THE FINDINGS MADE, EVIDENCE PRESENTED AT THE HEARING AND THE RECORD, THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES AS FOLLOWS:**

1.     **Confirmation**.  The Plan is approved and confirmed under section 1129(a) of the Code in its entirety.  The terms of the Plan are incorporated by reference in, and are an integral part of, this Confirmation Order.  A copy of the Plan is attached hereto as **Exhibit "A."**

2.     **Reorganized Debtor**.  H Michael Giles is hereby appointed to serve as the President of GILES-JORDAN, INC. as reorganized pursuant to the terms of the Plan (the "Reorganized Debtor").  The provisions governing distribution to creditors and interest holders set forth in Article IV of the Plan are deemed incorporated in this Confirmation Order as if set forth in full and are hereby approved.  The Reorganized Debtor shall assume the obligation to make distributions required to be made under Article IV of the Plan.  Subject to the terms of the Plan, the Reorganized Debtor shall have all the powers and duties enumerated in the Plan, as well as the duties and powers provided under applicable law for corporations formed under the laws of Texas.

3.     **Authorizations**.  On the Effective Date, the Reorganized Debtor shall be authorized and directed to take all necessary and appropriate actions to effectuate the transactions contemplated by the Plan and the Disclosure Statement, including, but not limited to the contribution deed to 230 East Beach, Ltd. and to all documents necessary to effectuate the loans from Moody National Bank and Frank Schaefer to 230 East Beach, Ltd.

4.     **Transfer of Assets to the Reorganized Debtor**.  On the Effective Date, the Debtor, in accordance with the Plan, will transfer the Property as defined in the Disclosure Statement together with all easements, rights-of-way, strips and gores of land, streets, ways alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, permits, licenses, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Property and the improvements and the revision and revisions, remainder and remainders, and all land lying in the bend of any

street, road or avenue, opened or proposed, in front of or adjoining the Property to the center line thereof, free and clear of all liens, rights and interests to 230 East Beach, Ltd.  All other Assets of the Debtor shall revest in the Reorganized Debtor.

5.    **Board of Directors**.  The initial directors of the Reorganized Debtor shall be the same directors as the current directors of the Debtor.

6.    **Provisions of Plan and Order Non-Severable and Mutually Dependent**.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law entered in conjunction with this Confirmation Order, are non-severable and mutually dependent.

7.    **Binding Effect of the Plan.**  The Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, all present and former holders of Claims and Owners of Interests, and their respective successors and assigns.

8.    **Assumption of Executory Contracts and Unexpired Leases**.  All executory contracts and unexpired leases to which Debtor is a party are deemed automatically assumed as of the Confirmation Date and assigned to 230 East Beach, Ltd.

9.    **Exculpation and Limitation of Liability**.  The exculpation and limitation of liability provision set forth in Article XII of the Plan is deemed incorporated in this Confirmation Order as if set forth in full and is hereby approved.  Neither the Debtor nor the Reorganized Debtor shall have or incur any liability to, or be subject to any right of action by, any person or entity, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for his fraud, willful misconduct or gross

negligence, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to his duties and responsibilities under the Plan.

10. **Satisfaction of Claims**. The treatment of and consideration to be received by holders of Allowed Claims pursuant to the Plan shall be deemed in full satisfaction, settlement, discharge, and release of such holders' respective Claims against the Estate. Provided that the Effective Date occurs,

11. **Injunction**. Persons that have held, currently hold, or may hold a Claim or other debt or liability, directly or indirectly, against the Debtor, Reorganized Debtor, and the Estate are

permanently enjoined: (i) with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; (ii) from creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtor, Reorganized Debtor, or the Estate, with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; (iii) from asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly against any obligation of the Debtor, Reorganized Debtor, or the Estate, with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; and (iv) from proceeding in any manner in any place whatsoever against the Debtor, Reorganized Debtor, or the Estate, with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan.

12. **Bar Date for Administrative Expense Claims**. Pursuant to Article II of the Plan, all requests for Administrative Claims shall be made thirty (30) days after the Confirmation Date, unless otherwise ordered by the Court. Holders of Asserted Administrative Expense Claims that

are subject to such bar date shall submit requests for payment on or before such bar date or forever be barred from doing so.

13.     **Allowance of Administrative Expense Claims**.  Subject to the provisions of sections 330(a), 331, and 503(b) of the Bankruptcy Code, each Administrative Expense Claim shall be paid in full, in Cash, by the Reorganized Debtor in such amount as such Administrative Expense Claim is Allowed by Final Order of the Bankruptcy Court on, or as soon as reasonably practicable after, the later of (i) the Effective Date or (ii) the date upon which there is a Final Order allowing such Administrative Expense Claim.

14.     **Termination of Injunctions and Automatic Stay**.  All injunctions or stays provided for in the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date.

15.     **Jurisdiction**.  The Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction:

(i)     To hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

(ii)     To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

(iii)     To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided in the Plan;

(iv)     To enter and implement such orders as may be appropriate in the event the

Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(v)     To construe and to take any action to enforce the Plan and this Confirmation Order;

(vi)     To issue such orders as may be necessary for the implementation, execution and consummation of this Plan and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and this Confirmation Order;

(vii)     To hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(viii)     To hear and determine all applications for Professional Claims;

(ix)     To hear and determine other issues presented or arising under this Plan, and disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with the Plan;

(x)     To determine such other matters and for such other purposes as may be provided in this Confirmation Order;

(xi)     To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

(xii)     To enter the Final Decree; and

(xiii)     To hear and determine any action concerning the recovery and liquidation of the Estate assets, wherever located, including, without limitation, litigation to liquidate and recover Estate assets that consist of claims and causes of action against third parties;

and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtor and the Estate including, without limitation, matters concerning federal, state and local taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

16.   **Notice of Entry of Confirmation Order**.  On or before the tenth (10th) Business Day following the Effective Date, the Debtor shall serve notice of this Confirmation Order pursuant to Bankruptcy Rules 2002(f), 2002(k), and 3020(c) on the United States Trustee, the parties on the Master Service List filed in the bankruptcy case and all parties requesting notice by causing the Notice of Entry of Confirmation Order to be delivered to such parties by United States first class mail, postage prepaid, or electronic mail.

17.   **Reference to Plan Provisions**.  The failure to include or reference specifically any particular provision of the Plan in this confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

18.   **Inconsistency**.  In the event of an inconsistency between the Plan and the Confirmation Order, the provisions of this Confirmation Order shall govern.  This Confirmation Order shall supersede any orders of the Court issued prior to the Effective Date that may be inconsistent herewith.

19.   **Binding Effect of the Plan**.  Pursuant to section 1123(a) and 1142(a) and the provisions of this Confirmation Order, the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

20.   **Governing Law**.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, the laws of the State of Texas shall govern the

construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan, without giving effect to the principles of conflicts of law.

SIGNED this _14_ day of May, 2015.


UNITED STATES BANKRUPTCY JUDGE

Case No. 14-80173-H3-11
GILES-JORDAN, INC.
Debtor

# Exhibit A

to

Order Confirming Debtor's
Third Amended Plan of Reorganization

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 14-80173-H3-11 |
| GILES-JORDAN, INC., | § | (Chapter 11) |
|     Debtor | § | |

---

**GILES-JORDAN, INC.'S**
**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

OPPEL & GOLDBERG, P.L.L.C.
Jeffrey Wells Oppel
Texas Bar No. 15291800
1010 Lamar, Suite 1420
Houston, Texas 77002
713-659-9200
713-659-9300 Fax

**ATTORNEYS FOR THE DEBTOR**                    **DATED: April 25, 2015**

**TABLE OF CONTENTS**

**INTRODUCTION**
**ARTICLE I**
**DEFINITIONS AND INTERPRETATION** ............................................................................1
    1.1     Rules of Interpretation ..............................................................................1
    1.2     Definitions ................................................................................................1
              1.2.1   "230 East Beach" ....................................................................2
              1.2.2   "Administrative Expense Claim" ...........................................2
              1.2.3   "Administrative Tax Claim" ..................................................2
              1.2.4   "Agreed Order" ......................................................................2
              1.2.5   "Allowed" ..............................................................................2
              1.2.6   "Assumed Contracts" .............................................................3
              1.2.7   "Available Cash" ....................................................................3
              1.2.8   "Avoidance Actions" .............................................................3
              1.2.9   "Ballot" ..................................................................................4
              1.2.10  "Bankruptcy Case" ................................................................4
              1.2.11  "Bankruptcy Code" ................................................................4
              1.2.12  "Bankruptcy Court" ...............................................................4
              1.2.13  "Bankruptcy Rules" ...............................................................4
              1.2.14  "Bar Date" .............................................................................4
              1.2.15  "Business Day" .......................................................................4
              1.2.16  "Claim" ..................................................................................4
              1.2.17  "Claimant" .............................................................................5
              1.2.18  "Class" ...................................................................................5
              1.2.19  "Closing Date" .......................................................................5
              1.2.20  "Confirmation Date" ..............................................................5
              1.2.21  "Confirmation Hearing" .........................................................5
              1.2.22  "Confirmation Order" .............................................................5
              1.2.23  "Creditor" ..............................................................................5
              1.2.24  "Debtor" .................................................................................5
              1.2.25  "Disallowed Claim" ...............................................................5
              1.2.26  "Disclosure Statement" ..........................................................5
              1.2.27  "Disputed Claim" ...................................................................6
              1.2.28  "Disputed Claims Reserve" ....................................................6
              1.2.29  "Distribution Date" ................................................................6
              1.2.30  "Distribution Reserve" ...........................................................7
              1.2.31  "Effective Date" .....................................................................7
              1.2.32  "Executory Contract" .............................................................7
              1.2.33  "Final Decree" ........................................................................7
              1.2.34  "Final Distribution" ...............................................................7
              1.2.35  "Final Distribution Date" .......................................................7
              1.2.36  "Final Order" ..........................................................................7
              1.2.37  "Governmental Unit" ..............................................................8
              1.2.38  "Initial Distribution" .............................................................8
              1.2.39  "Initial Distribution Date" ......................................................8

1.2.40 "Interest" .................................................................8
1.2.41 "Investment Capital" ..................................................2
1.2.42 "Lien" ......................................................................8
1.2.44 "Person" ...................................................................8
1.2.44 "Petition Date" .........................................................9
1.2.45 "Plan" ......................................................................9
1.2.46 "Priority Claim" ........................................................9
1.2.47 "Priority Tax Claim" ..................................................9
1.2.48 "Professional" ..........................................................9
1.2.49 "Professional Claim" .................................................9
1.2.50 "Pro Rata Share" ......................................................9
1.2.51 "Record Date" .........................................................10
1.2.52 "Remaining Assets" .................................................10
1.2.53 "Reorganized Debtor" ..............................................10
1.2.54 "Schedule of Assumed Contracts" ..............................10
1.2.55 "Schedules" ............................................................10
1.2.56 "Secured Claim" ......................................................10
1.2.57 "Secured Tax Claim" ................................................10
1.2.58 "Subordinated Claim" ...............................................11
1.2.59 "Tax Regulations" ....................................................11
1.2.60 "Unsecured Claim" ...................................................11
1.2.61 "Voting Period" ........................................................11

**ARTICLE II**
**PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND**
  **PRIORITY TAX CLAIMS** ...................................................11
    2.1     Treatment of Allowed Administrative Expense Claims. ...........................11
              2.1.1   Administrative Expense Claims Bar Date (Excluding
              Administrative Tax Claims)........................................11
              2.1.2   Approval of Payments........................................12
              2.1.3   Administrative Tax Claims Bar Date................................12

**ARTICLE III**
**CLASSIFICATION OF CLAIMS** ...................................................13
    3.1     Creation of Classes ...................................................13
    3.2     Claims May Be in More Than One Class .................................13

**ARTICLE IV**
**IDENTIFICATION OF CLASSES OF CLAIMSTHAT ARE AND ARE NOT IMPAIRED**
  **UNDER THIS PLAN** ...................................................14
    4.1     Classes of Claims Not Impaired ...................................14
    4.2     Impaired Classes of Claims ...................................14
    4.3     Impairment Controversies...................................14

**ARTICLE V**
**PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS**.................................14
      5.1    Class 1-Allowed Priority Claims .......................................................14
      5.2    Class 2-Allowed Secured Tax Claims ..............................................14
      5.3    Class 3-Allowed Secured Claim of Galveston Shores L.P. ..............15
      5.4    Class 4-Allowed Secured Claim of Jones & Carter..........................15
      5.5    Class 5-Allowed Unsecured Claims ..................................................15
      5.6    Class 6-Allowed Insider Claim of Harry and Teresa Giles ..............16
      5.7    Class 7-Allowed Interests Equity Owners ........................................16

**ARTICLE VI**
**ACCEPTANCE OR REJECTION OF PLAN; CRAMDOWN** .................................16
      6.1    Classes and Claims Entitled to Vote.................................................16
      6.2    Cramdown.........................................................................................17

**ARTICLE VII**
**PROVISIONS FOR THE RESOLUTION OF OBJECTIONS TO CLAIMS** ...............17
      7.1    Objections to Claims.........................................................................17
      7.2    Amendments to Claims; Claims Filed After the Confirmation Date.........18

**ARTICLE VIII**
**FUNDING OF DISTRIBUTIONS AND PROVISIONS FOR TREATMENT OF**
      **DISPUTED CLAIMS** ...................................................................................18
      8.1    Reorganized Debtor ..........................................................................18
      8.2    Limited Partnership Organization.....................................................18
      8.3    Distribution of Sales Proceeds .........................................................19
      8.4    Loan/Exit Financing..........................................................................20
      8.5    Implementation of Plan.....................................................................20
      8.6    Feasibility of Plan .............................................................................20
      8.7    Revesting Property.............................................................................20
      8.8    Management of the Debtor ................................................................20
      8.9    Affiliates of Debtor ..........................................................................20
      8.10   Disbursing Establishment of Reserves .............................................21
      8.11   Disbursing Agent ..............................................................................22
      8.12   Distributions......................................................................................22
      8.13   Disputed Payments or Distributions .................................................22
      8.14   Minimum Distribution ......................................................................23
      8.15   Setoff................................................................................................23

**ARTICLE IX**
**REORGANIZED DEBTOR** .........................................................................................23
      9.1    Reorganized Debtor ..........................................................................23

**ARTICLE X**
**EXECUTORY CONTRACTS** .......................................................................................23
      10.1   Rejection ...........................................................................................23

        10.1.1 Claims for Rejection Damages ...........................................23

        10.1.2 Objections to Proofs of Claim Based On Rejection Damages....24

10.2    Assumption ..............................................................................24

        10.2.1 Proposed Cure Amounts For Assumed Contracts .............24

**ARTICLE XI**

**CONDITIONS PRECEDENT** ...................................................................24

11.1    Conditions Precedent to Confirmation.......................................25

11.2    Conditions Precedent to Effective Date......................................25

**ARTICLE XII**

**EFFECTS OF PLAN CONFIRMATION** ................................................25

12.1    Satisfaction of Claims ..............................................................25

12.2    Injunction .................................................................................26

12.3    No Liability for Solicitation or Participation .............................26

12.4    Term of Injunctions and Stays ..................................................26

12.5    Release of Liens .......................................................................26

**ARTICLE XIV**

**MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN** ........................26

13.1    Modification of this Plan ..........................................................26

13.2    Revocation or Withdrawal of this Plan ......................................27

**ARTICLE XV**

**RETENTION OF JURISDICTION**...........................................................27

14.1    Jurisdiction of Bankruptcy Court...............................................29

14.2    Failure of Bankruptcy Court to Exercise Jurisdiction.................29

**ARTICLE XVI**

**MISCELLANEOUS PROVISIONS**...........................................................29

15.1    Payment of Statutory Fees ........................................................29

15.2    Retention of Actions and Defenses............................................30

15.3    No Admissions..........................................................................30

15.4    Plan Controls............................................................................31

15.5    Governing Law .........................................................................31

15.6    Successors and Assigns.............................................................31

15.7    Severability ..............................................................................31

15.8    Notices and Distributions..........................................................31

15.9    Unclaimed Property ..................................................................32

15.10  Binding Effect...........................................................................32

15.11  Withholding and Reporting........................................................33

15.12  Other Documents and Actions...................................................33

15.13  Default......................................................................................33

**CONFIRMATION REQUEST** .................................................................33

Giles-Jordan, Inc. ("Giles-Jordan" or the "Debtor") hereby proposes this its Third Amended Chapter 11 Plan of Reorganization pursuant to the provisions of Section 1121(a) of the Bankruptcy Code:

## INTRODUCTION

The Debtor is engaged in the development and sale of 52 residential lots and a hotel site on the East beachfront of Galveston, Texas (the "Property").  The Debtor owns the 39.16 acres that has been platted and rezoned. As more fully discussed below, this Plan contemplates that the Debtor will obtain capital in the form of partnership investment to pay administrative and unsecured claims and exit financing in the form of a development loan to pay its secured claims and transfer the Property to the partnership and thereby obtain satisfaction and release of claims, rights, and interests in and against the Debtor and its estate.

## ARTICLE I

## DEFINITIONS AND INTREPRETATION

1.1     Rules of Interpretation.  Unless otherwise specified, all Section, Article and Exhibit references in this Plan are to the respective Section in, Article of, or Exhibit to this Plan, as the same may be amended, waived or modified from time to time.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Words denoting the singular number shall include the plural number and vice versa.  In construing this Plan, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.2     Definitions.  Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to

them in the Bankruptcy Code.  Unless otherwise provided in this Plan, the following terms (which appear in this Plan as capitalized terms) have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

      1.2.1   "230 East Beach" means 230 East Beach, Ltd., a Texas limited partnership.

      1.2.2   "Administrative Expense Claim" means a Claim for costs and expenses of administration of the Bankruptcy Case allowed under Sections 503, 507(a)(1) or 507(b) of the Bankruptcy Code and approved by Final Order of the Bankruptcy Court, and all fees and costs assessed against the Estate pursuant to 28 U.S.C. § 1930.

      1.2.3   "Administrative Tax Claim" means an Administrative Expense Claim held by a Governmental Unit for taxes (and for interests and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

      1.2.4   "Agreed Order" means the Agreed Order submitted by the Debtor and Galveston Shores entered by the Bankruptcy Court on September 23, 2014.

      1.2.5   "Allowed" means, subject to Section 7.1 of this Plan, as it relates to any type of Claim provided for under this Plan, a Claim (i) which has been scheduled as undisputed, noncontingent and liquidated in the Schedules and as to which (a) no proof of Claim has been timely filed, and (b) no objection thereto has been timely filed; (ii) as to which a proof of Claim has been timely filed and either (a) no objection thereto has been timely filed, or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been expressly allowed under the provisions

of this Plan; or (iv) which is an Administrative Expense Claim approved by Final Order of the Bankruptcy Court.

1.2.6  "Assumed Contracts" means the Executory Contracts not rejected by the Debtor, if any, as such schedule may be amended or modified from time to time pursuant to Section 10.2 of this Plan.

1.2.7  "Available Cash" means all cash of the Estate available on or after the Effective Date pursuant to the provisions of the Plan, as well as all cash that subsequently becomes the property of the Estate, including, without limitation, (i) cash in any bank accounts which contain property of the Estate wherever located; (ii) cash proceeds realized from the sale, disposition, collection, or other realization of value in respect of the property of the Estate (including interest earned thereon if applicable), LESS (a) the cash or property contained in the Disputed Claims Reserve and any other similar reserve or escrow accounts established or maintained by the Debtor after the Petition Date, and (b) the amount determined by the Debtor, as reorganized to be necessary and appropriate to reserve for future costs of administration of the Estate and continuation of the business (including, without limitation, the compensation, fees and costs of all professionals, consultants, and experts retained or to be retained by the Debtor, as reorganized), for pursuing causes of action against third parties pursuant to the terms of this Plan.

1.2.8  "Avoidance Actions" means any and all actions which a trustee, Debtor-in-possession or other appropriate party in interest may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code.

-3-

1.2.9   "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each holder of a Claim entitled to vote to accept or reject this Plan, on which such holder may vote to accept or reject this Plan.

1.2.10  "Bankruptcy Case" means the bankruptcy case initiated by the Debtor in the Bankruptcy Court on May 5, 2014, enumerated as Case No. 14-80173-H3-1.

1.2.11  "Bankruptcy Code" means Title 11 of the United States Code, Section 101, et seq., as now in effect or as hereafter amended.

1.2.12  "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

1.2.13  "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under Section 2075 of Title 28 of the United States Code, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

1.2.14  "Bar Date" means such dates set by the Bankruptcy Court by which proofs of Claim must be filed.

1.2.15  "Business Day" means any day which is not a Saturday, a Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

1.2.16  "Claim" means a claim against Giles-Jordan or its property, as such term is defined in Section 101(5) of the Bankruptcy Code.

1.2.17 "<u>Claimant</u>" means the holder of any Claim entitled to distributions with respect to such Claim.

1.2.18 "<u>Class</u>" means one of the categories of Claims or Interests established under Article III of this Plan pursuant to Section 1122 of the Bankruptcy Code.

1.2.19 "<u>Closing Date</u>" means the date on which the documents necessary to effectuate this Plan are executed.

1.2.20  "<u>Confirmation Date</u>" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.2.21  "<u>Confirmation Hearing</u>" means the hearing(s) before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

1.2.22  "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

1.2.23  "<u>Creditor</u>" means any entity holding a Claim.

1.2.24  "<u>Debtor</u>" means Giles-Jordan, Inc., the Debtor and Chapter 11 Debtor in possession in this Bankruptcy Case.

1.2.25  "<u>Disallowed Claim</u>" means a Claim or portion thereof that (i) has been disallowed by a Final Order; (ii) is identified in the Schedules in an amount of zero dollars or as contingent, unliquidated or disputed and as to which a proof of Claim was not filed on or before the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed on or before the Bar Date.

1.2.26 "<u>Disclosure Statement</u>" means the Disclosure Statement submitted with respect to the Plan and approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on and confirmation of the Plan, or as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

1.2.27 "<u>Disputed Claim</u>" means any Claim or any portion thereof which has not become allowed and which is not a Disallowed Claim.  In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless the Debtor or the Reorganized Debtor, the objecting party and the holder thereof agree otherwise; provided, however, that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under Section 502(c) of the Bankruptcy Code.  Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim shall be deemed to constitute a Disputed Claim.

1.2.28 "<u>Disputed Claims Reserve</u>" means the interest bearing reserve account established by the Debtor or the Reorganized Debtor pursuant to Section 8.2 of this Plan with respect to all Disputed Claims.

1.2.29 "<u>Distribution Date</u>" means the date within ten (10) days of the Closing Date and any subsequent date on which distributions of cash and other Estate assets are to be made.

1.2.30 "<u>Distribution Reserve</u>" means the interest bearing reserve accounts established by the Reorganized Debtor pursuant to Section 8.2 of this Plan from which all distributions under the Plan shall be made.

1.2.31 "<u>Effective Date</u>" means the first Business Day immediately following the date on which all of the conditions specified in Section 11.2 of this Plan are first satisfied or waived.

1.2.32 "<u>Executory Contract</u>" means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date as such terms are used within Section 365 of the Bankruptcy Code.

1.2.33 "<u>Final Decree</u>" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

1.2.34 "<u>Final Distribution</u>" means the last distribution made to Claimants pursuant to the Plan.

1.2.35 "<u>Final Distribution Date</u>" means the date of the Final Distribution.

1.2.36 "<u>Final Order</u>" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court, or by any state or other federal court or other tribunal, having jurisdiction over the subject matter thereof, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which (i) the time to appeal or petition for review, rehearing or certiorari has expired and no appeal or petition for review, rehearing or certiorari is pending; or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

1.2.37 "Governmental Unit" means a governmental unit as such term is defined in Section 101(27) of the Bankruptcy Code.

1.2.38 "Initial Distribution" means the first distribution of cash or other property made to the holders of Allowed Claims in a given Class (from the Distribution Reserve) in accordance with and pursuant to this Plan.

1.2.39 "Initial Distribution Date" means the date on which the Initial Distribution is made.

1.2.40 "Interest" means an interest or equity interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of equity security holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

1.2.41 "Investment Capital" means the first $1,500,000.00 in development loan proceeds received by 230 East Beach, Ltd. from Frank Schaefer.

1.2.42 "Lien" means valid and enforceable liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind against the Remaining Assets.

1.2.43 "Person" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

1.2.44 "Petition Date" means May 5, 2014, the date on which the Debtor commenced the Bankruptcy Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.2.45 "Plan" means this Chapter 11 plan, either in its present form or as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

1.2.46 "Priority Claim" means a Claim entitled to priority in payment under Section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Expense Claim or a Priority Tax Claim.

1.2.47 "Priority Tax Claim" means a Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

1.2.48 "Professional" means any Person employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

1.2.49 "Professional Claim" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

1.2.50 "Pro Rata Share" means, with respect to any distribution to a Class or Interest under this Plan, as of any particular Distribution Date, proportionate sharing pursuant to which the ratio of the cumulative amount of all funds distributed on account of an Allowed Claim or Interest to the amount of such Allowed Claim or Interest is the same as the ratio of the cumulative amount distributed to such Class to the total amount of all Allowed Claims or Interests and Disputed Claims or Interests classified into such Class.

1.2.51 "Record Date" means, for purposes of voting, the date ten (10) days prior to the Confirmation Hearing.

1.2.52 "Remaining Assets" means any and all assets and other property of the Estate as of the Effective Date, including, without limitation, (i) cash; (ii) the Property; and (iii) any reserve established or maintained by the Debtor.

1.2.53 "Reorganized Debtor" or "Debtor, as reorganized" means Giles-Jordan, Inc. as reorganized pursuant to Article 9.1 of this Plan.

1.2.54 "Schedule of Rejected Contracts" means the schedule to be filed with the Bankruptcy Court pursuant to Section 10.2 of this Plan.

1.2.55 "Schedules" means the Schedules and Statement of Financial Affairs filed by the Debtor with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

1.2.56 "Secured Claim" means a Claim that is alleged to be secured, in whole or in part, (i) by a Lien that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law; or (ii) as a result of rights of setoff under Section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the holder's interest in the Estate's interest in property or to the extent of the amount subject to such setoff, as the case may be.

1.2.57 "Secured Tax Claim" means a Secured Claim of a Governmental Unit for taxes arising or accrued before the Petition Date.

1.2.58 "<u>Subordinated Claim</u>" means a Claim that is subordinated pursuant to Sections 510(b) or 510(c) of the Bankruptcy Code, or by Final Order of the Bankruptcy Court, or otherwise.

1.2.59 "<u>Tax Regulations</u>" means the regulations promulgated under the Title 26 of the United States Code.

1.2.60 "<u>Unsecured Claim</u>" means any Claim that is not an Administrative Expense Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, a Secured Tax Claim, a Subordinated Claim or Disputed Claim.

1.2.61 "<u>Voting Period</u>" means the period established by the Bankruptcy Court within which Ballots may be cast on the Plan.

## ARTICLE II

## PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX

2.1     <u>Treatment of Allowed Administrative Expense Claims</u>.  Each holder of an Allowed Administrative Expense Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim (i) the amount of such Allowed Administrative Expense Claim, without interest, in cash, on or as soon as practicable after the later of (a) the Effective Date, or (b) the date that is ten (10) Business Days after such Claim becomes an Allowed Administrative Expense Claim unless the holder of an Allowed Administrative Expense Claim agrees to a different treatment.

2.1.1     <u>Administrative Expense Claims Bar Date (Excluding Administrative Tax Claims)</u>.  All requests for payment, or any other means of preserving and obtaining payment, of Administrative Expense Claims arising on or before the Confirmation Date,

that have not been paid, released or otherwise settled, including all requests for payment of Professional Claims, other than Administrative Tax Claims, must be filed with the Bankruptcy Court and served upon the Debtor, the Reorganized Debtor, the United States Trustee and all parties who have requested notice in the manner prescribed in the notice to be mailed pursuant to Section 11.3 of this Plan by the earlier of (i) thirty (30) days after the Effective Date; or (ii) any applicable bar date established by the Bankruptcy Court and noticed separately by the Debtor or the Reorganized Debtor.  Any request for payment of Administrative Expense Claims, other than Administrative Tax Claims, that is not timely filed as set forth above will be forever barred, and holders of such Claims will not be able to assert such Claims in any manner against the Debtor or the Estate.

2.1.2   Approval of Payments.  All payments made or to be made by the Debtor for costs and expenses in or in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, shall be subject to approval of the Bankruptcy Court as reasonable, following application and the opportunity for notice and a hearing pursuant to Section 2.1.1 of this Plan.

2.1.3   Administrative Tax Claims Bar Date.  All requests for payment or any other means of preserving and obtaining payment of Administrative Tax Claims that have not been paid, released or otherwise settled must be filed with the Bankruptcy Court and served upon the Debtor, the Reorganized Debtor, and the United States Trustee (i) thirty (30) days after the Effective Date; or (ii) one hundred and twenty (120) days after the filing of the tax return for such taxes with the applicable Governmental Unit.  Any request for payment of Administrative Tax Claims that is not timely filed as set forth above will be forever barred, and holders of such Claims will not be able to assert such Claims in any manner

against the Debtor or the Estate.  It is the intention of the Plan that all taxes arising from any asset dispositions prior to the Effective Date shall first have payable out of the proceeds thereof any amount required for payment of taxes due.

## ARTICLE III

## CLASSIFICATION OF CLAIMS

3.1     Creation of Classes.  Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims.  Administrative Expense Claims and Priority Tax Claims have not been classified and are excluded from the following classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.   For purposes of organization, voting and all confirmation matters with respect to other Claims, this Plan classifies the Claims and Interests against the Debtor as follows:

Class 1-Allowed Priority Claims

Class 2-Allowed Secured Tax Claims

Class 3-Allowed Secured Claim of Galveston Shores L.P.

Class 4-Allowed Secured Claim of Jones & Carter.

Class 5-Allowed Unsecured Claims

Class 6-Allowed Insider Claim of Harry and Teresa Giles

Class 7- Allowed Interests of Equity Owners

3.2     Claims May Be in More Than One Class.  An Allowed Claim is part of a particular Class only to the extent that the Allowed Claim qualifies within the definition of that Class and such Claim is part of a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

## ARTICLE IV

### IDENTIFICATION OF CLASSES OF CLAIMS
### THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN

4.1     <u>Classes of Claims Not Impaired</u>.  Class 1 through 5 are not impaired under this Plan.

4.2     <u>Impaired Classes of Claims</u>.  Other than the Class specified in Section 4.1 above, all other Classes of Claims and Interests are impaired under this Plan.

4.3     <u>Impairment Controversies</u>.  If a controversy arises as to whether any Class of Claims and Interests are impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class of Claims under this Plan.

## ARTICLE V

### PROVISIONS FOR TREATMENT OF CLASSES OF
### CLAIMS

5.1     <u>Class 1-Allowed Priority Claims</u>.  Each holder of an Allowed Priority Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Priority Claim, in cash upon the later of (a) the Effective Date, or (b) the date that is ten (10) Business Days after such Claim becomes an Allowed Priority Claim.  Giles-Jordan is not aware of any Allowed Priority Claims.

5.2     <u>Class 2-Allowed Secured Tax Claims</u>.  All ad valorem taxes for 2013 and 2014 have been paid.  The 2015 secured ad valorem taxes to be assessed and owed to Galveston County and Galveston ISD shall be paid as ordinary course expenses prior to their delinquency.  To the extent such taxes, or any subsequent post-petition taxes are not timely paid, then the taxing

authorities shall be entitled to pursue collection through allowed state court procedures, without further notice or order of the Bankruptcy Court.

5.3     Class 3-Allowed Secured Claim of Galveston Shores.   This claim consists of the claim of Galveston Shores evidenced by a promissory note in the principal amount of $3,450,000.00 and secured by a lien in and against the Property (the "Galveston Shores Note"). The amount, as of September 5, 2014 was $3,852,201.00 with interest continuing to accrue as provided in the Agreed Order.  On the Effective Date, 230 East Beach shall satisfy in full all amounts owed under the Galveston Shores Note.

5.4     Class 4-Allowed Secured Claim of Jones & Carter.  This claim consists of the claim of Jones & Carter who has filed a claim in the amount of $56,369.38, purporting to be secured by a M&M lien against the Debtor's property.  The Debtor has not concluded its analysis of this claim. Whether an Allowed Class 4 Claims or as an Allowed Class 5 Claim, the claim will be paid in full on the Effective Date from Available Cash.  Failure to pay Allowed Secured Claim of Jones & Carter in full by the Effective Date shall constitute a default under the Plan.

5.5     Class 5-Allowed Unsecured Claims.   Each holder of the Allowed Unsecured Claims shall receive payment in full from Available Cash, including cash on hand from the Investment Capital on the Initial Distribution Date.  If there is insufficient Available Cash and net proceeds from the Development Loan to fund the full payment of all allowed Unsecured Claims, the balance of such claims shall be paid within thirty (30) days of the Effective Date (the "Second Distribution Date") from Available Cash, being cash provided by contributions from the Debtor's equity owners.  Failure to pay Allowed Unsecured Claims in full by the Second Distribution Date shall constitute a default under the Plan.

The holders of Unsecured Claims as scheduled are as follows:

| Creditor | Claim Amount |
|---|---|
| ASTE, LLC | $ 1,070.00 |
| CDS | $ 8,000.00 |
| Greer Herz & Adams, LLP | $22,837.50 |
| Jones & Carter | $56,369.38 |

5.6     Class 6-Allowed Insider Claims of Harry and Teresa Giles.     The holders of the Claim in Class 6 will retain their claim against the Reorganized Debtor and such Claim will be assumed by the Reorganized Debtor and paid from cash flow.

5.7     Class 7-Allowed Interests of Equity Owners.     All ownership interests in the Reorganized Debtor will be retained by Mickey Giles.  Any capital contributions paid post-petition by Mickey Giles shall be converted to debt and assumed by the Reorganized Debtor and paid from cash flow.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF PLAN; CRAMDOWN

6.1     Classes and Claims Entitled to Vote.  Each holder as of the Record Date of an impaired Claim and owner of an Interest shall be entitled to vote to accept or reject this Plan. Classes of Claims not impaired under this Plan shall not be entitled to vote to accept or reject this Plan and shall be presumed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Class 1 through 5 are not impaired and hence are presumed to have accepted this Plan.  Classes 6 and 7 are impaired and therefore are entitled to vote to accept or reject this Plan.

6.2     Cramdown.  If all applicable requirements for confirmation of this Plan are met as set forth in Sections 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8), the

Debtor shall request that the Bankruptcy Court confirm this Plan in accordance with Section 1129(b) of the Bankruptcy Code, so long as at least one impaired Class of Claims has accepted this Plan, on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting impaired Class.

**ARTICLE VII**

**PROVISIONS FOR THE RESOLUTION OF OBJECTIONS
TO CLAIMS**

7.1     <u>Objections to Claims</u>.  Subject to the provisions of this Section 7.1, following the Effective Date, the Debtor, the Reorganized Debtor, any creditor or any party-in-interest, shall be authorized to object to Claims so as to have the Bankruptcy Court determine the Allowed amount, if any, of such Claims to be paid under this Plan.  An objection to the allowance of a Claim by any person must be filed with the Bankruptcy Court and served upon the holder of the Claim, and all parties who have requested notice in the manner prescribed in the notice to be mailed pursuant to Section 11.4 of this Plan, by no later than thirty (30) days after the Effective Date or such other date set by order of the Bankruptcy Court.  An objection to the allowance of a Claim filed by the Debtor or the Reorganized Debtor must be filed with the Bankruptcy Court and served upon the holder of the Claim by no later than sixty (60) days after the Effective Date.  Prior to the expiration of thirty (30) days from the date of service of the objection, the Claimant whose Claim was the subject of the objection must file with the Bankruptcy Court and serve upon the party who filed such objection and the Debtor and the Reorganized Debtor, a response to the objection.  Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Claimant and thereby grant the relief requested in the objection.  Pending allowance of a Claim, the Claim shall be entitled to no distribution.

-17-

7.2     Amendments to Claims; Claims Filed After the Confirmation Date.  Except as provided in Section 10.1.1 as to rejection damage Claims and otherwise provided in the Plan, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date.  Except for claims by governmental units or as otherwise provided in the Plan, any new Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor or the Reorganized Debtor.

## ARTICLE VIII

## MEANS FOR EXECUTION OF PLAN

8.1     Reorganized Debtor.  The Debtor will remain in business as reorganized and will become a limited partner in 230 East Beach.    Pursuant to the Plan, Giles-Jordan, Inc. will contribute the Property to 230 East Beach.  In consideration for the contribution, 230 East Beach will assume and pay all Allowed Claims.

8.2     Limited Partnership Organization.  Preserve at East Beach, LLC will be the General Partner of 230 East Beach with a sixty percent (60%) interest in 230 East Beach.  Giles-Jordan, Inc. will be a forty percent (40%) limited partner in 230 East Beach.  Frank Schaefer will loan 230 East Beach $1,500,000.00 for development of the Property ("Development Loan") and receive in return a second lien in and against the Property.

230 East Beach will begin operations once it receives the $1,500,000.00 from the Development Loan (the "Investment Capital").

8.3     Distribution of Sales Proceeds.  230 East Beach will distribute proceeds realized from operating cash flow and capital transactions at least quarterly; however, the General Partner may retain amounts it considers prudent as reserves to meet future expenses and liabilities of the Partnership.  Cash will be distributed as follows:

> (i)     To the first lien holder, Moody National Bank in accordance to the release provisions as agreed to by the Debtor and Moody National Bank;
>
> (ii)    To the second lien holder, Frank Schaefer pursuant to the terms of the Limited Partnership Agreement; and
>
> (iii)   To the general partner and limited partners of 230 East Beach pursuant to the terms of the Limited Partnership Agreement.

Losses will be allocated severally in accordance with the partners' respective interests. Gains will be allocated in accordance with the cash distributions. A copy of the Limited Partnership Agreement is attached hereto as Exhibits D.

8.4     Loan/Exit Financing.  Prior to May 31, 2015, 230 East Beach will obtain exit financing from Moody National Bank in the form of a loan of $4,500,000.00 to satisfy the remaining indebtedness of Galveston Shores and pay all Allowed Claims. In consideration thereof, 230 East Beach will grant Moody National Bank a first lien in and against the Property.

8.5     Implementation of Plan.      Within twenty (20) days of the order confirming the Plan (the "Closing Date"), (i) the Debtor will contribute the Property free and clear of all liens, rights and encumbrances to 230 East Beach, (ii) the general partner and Debtor will execute the Limited Partnership Agreement substantially in the form attached as Exhibit D to the Disclosure Statement, (iii) the Debtor and Moody National Bank shall enter into and execute all documents necessary for Moody National Bank to retain a valid first Lien in and against the Property, (iv) 230 East Beach and Frank Schaefer enter into and execute all documents necessary for Frank Schaefer to obtain a valid second lien against the Property, and (v) the Debtor will enter into and execute all other documents necessary to implement the Plan.

8.6     <u>Feasibility of Plan.</u>  The feasibility of the Plan is contingent upon the receipt of the Investment Capital of $1,500,000.00 from Frank Schaefer and the funding of the Exit Loan.  Prior to the Confirmation Date, the Debtor anticipates that the loan funds will be deposited into an escrow account subject to confirmation of the Plan.

8.7     <u>Revesting of Property.</u>  All property of the Debtor will be contributed to 230 East Beach subject only to the terms provided in this Plan including the Liens of Moody National Bank and Frank Schaefer.

8.8     <u>Management of the Debtor.</u>  The Debtor, as reorganized, will continue to be managed by Mickey Giles as President, Vice President, Secretary, and Treasurer.  Mr. Giles' biography is attached as Exhibit E to the Disclosure Statement.  Mr. Giles shall receive no compensation for his role as officer of the Reorganized Debtor.  However, it is anticipated that Mr. Giles and/or H. Michael Giles, Inc. may be retained to provide accounting services to the Reorganized Debtor at their customary rates of $150.00 per hour.  Mr. Giles and/or a company he forms will act as the manger of construction and development for 230 East Beach for one year at $4,000.00 per month.

8.9     <u>Affiliates of the Debtor.</u>  The Debtor has no current affiliates.  Pursuant to the Plan, Preserve at East Beach, LLC will be the General Partner of and sixty percent (60%) owner of 230 East Beach (the "General Partner").

8.10     <u>Establishment of Reserves.</u>  On the Effective Date, the Reorganized Debtor shall establish and fund the Distribution Reserve and the Disputed Claims Reserve from Available Cash. The Reorganized Debtor shall fund the Disputed Claims Reserve with cash in an amount sufficient to pay (i) the full amount of all anticipated and/or Disputed Administrative Expense Claims (unless holders of such Claims reach other agreement), Disputed Priority Tax Claims and Disputed Claims

in Classes 1 and 2; and (ii) any other amount that the Debtor or the Reorganized Debtor deems necessary and appropriate.

The Debtor or the Reorganized Debtor shall fund the Distribution Reserve with sufficient cash to pay (i) in full all Allowed Administrative Expense Claims (absent other agreement with the holder of such Claims), all Allowed Priority Tax Claims, of all Allowed Claims in Classes 1 through 3; and (ii) the remaining Available Cash.

8.11    Disbursing Agent.  The Reorganized Debtor shall serve as the disbursing agent and shall make all distributions provided for under this Plan.  He or she shall be entitled to receive as a fee his or her hourly rate payable from the Estate.

8.12    Distributions.  The Initial Distribution Date shall be within ten (10) days of the Closing Date of the Plan or as soon as practicable thereafter.  On the Initial Distribution Date, the Reorganized Debtor shall make the Initial Distribution from the Distribution Reserve.  By the Initial Distribution, the Reorganized Debtor shall pay (i) to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in Classes 1, if any, 2, if any, 4 and Class 5, the allowed amount of such Claims.  If claims in Class 5 are not satisfied in full on the First Distribution Date, such claims will be satisfied on the Second Distribution Date, to be no later than thirty (30) days after the Initial Distribution Date. When a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall make to the holder of such Claim, from the Disputed Claims Reserve, a distribution equal to the distribution that would have been made to such holder with respect to such Claim if such Claim previously had been an Allowed Claim.

8.13    Disputed Payments or Distributions.  In the event of any dispute between or among Claimants as to the right of any Person to receive or retain any distribution to be made to such Claimant under the Plan, the Reorganized Debtor may, in lieu of making such distribution, make

it instead into an escrow for payment or distribution as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree among themselves.  Any Claimant which fails to raise such dispute pursuant to this Section 8.6 of this Plan by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed distribution by the Reorganized Debtor shall be deemed to have forever waived any right to dispute such distribution or to restrict the use of such distribution.

8.14    Minimum Distribution.  Notwithstanding anything to the contrary in this Plan, the Reorganized Debtor shall not be required to make distribution of less than one hundred dollars ($100.00) to any Claimant unless such distribution is the Final Distribution to such Claimant.

8.15    Setoff.  The Reorganized Debtor may, but shall not be required to, set off against any Claim, and the distributions to be made pursuant to this Plan with respect to such Claim, claims of any nature whatsoever that the Reorganized Debtor or the Estate may have against the holder of such Claim.  Notwithstanding the foregoing, the failure to affect such a set off will not constitute a waiver or release the Reorganized Debtor of any such claim against such holder.

## ARTICLE IX

## REORGANIZED DEBTOR

9.1    Reorganized Debtor.  The Debtor will remain in business and the Debtor, as reorganized, will be a limited partner of 230 East Beach and the Disbursing Agent as provided in this Plan.

## ARTICLE X

## EXECUTORY CONTRACTS

10.1     <u>Rejection</u>.  Effective on and as of the Effective Date, all Executory Contracts and unexpired Leases that exist between the Debtor and any Person and that have not previously been rejected hereunder, will be deemed assumed pursuant to Section 365 of the Bankruptcy Code.

10.1.1  <u>Claims for Rejection Damages</u>.  Proofs of Claims for damages allegedly arising from the rejection, pursuant to this Plan or the Confirmation Order, of any Executory Contract to which a Claimant is a party must be filed with the Bankruptcy Court and served on the Debtor and the Reorganized Debtor not later than thirty (30) days after the Effective Date.  All proofs of Claim for such damages not timely filed and properly served as prescribed herein shall be forever barred and the holder of such a claim shall not be entitled to participate in any distribution under the Plan.

10.1.2  <u>Objections to Proofs of Claim Based On Rejection Damages</u>.  All creditors and parties-in-interest shall be authorized to file an objection to any proof of Claim based on the rejection of an Executory Contract pursuant to this Plan or the Confirmation Order.  The objection to any such proof of Claim shall be filed not later than sixty (60) days after the later of (i) the date that such proof of Claim is filed; and (ii) the Effective Date.

10.2     <u>Assumption</u>.  Effective on and as of the Effective Date, the Assumed Contracts shall be deemed assumed by the Debtor pursuant to Section 365 of the Bankruptcy Code, shall comprise part of the Estate and shall be assigned to the Reorganized Debtor.  The Debtor will file the Schedule of Assumed Contracts on or before ten (10) days prior to the hearing to approve this Plan by filing a writing to such effect with the Bankruptcy Court with a copy of such schedule to the parties to the Executory Contracts affected thereby.

-23-

10.2.1 <u>Proposed Cure Amounts For Assumed Contracts</u>.   Cure amounts, consisting of security deposits for the Assumed Contracts shall be deposited on the Effective Date of the Plan or as soon thereafter as reasonable practicable, in full satisfaction, release and discharge of and in exchange for any and all Claims for amounts necessary to cure any existing defaults or arrearages under the Assumed Contracts.

## ARTICLE XI

## CONDITIONS PRECEDENT

11.1 <u>Conditions Precedent to Confirmation</u>.   This Plan shall not be confirmed until the Bankruptcy Court has entered the Confirmation Order.

11.2 <u>Conditions Precedent to Effective Date</u>.   The Plan shall not become effective and operative unless and until the Effective Date occurs.   The Effective Date shall occur after the following conditions have been satisfied and such must occur on or before the 14th day following the Confirmation Date:

      (a)     The Confirmation Order shall have become a Final Order.

      (b)     All notes, security instruments, and other documents necessary to effectuate the terms of this Plan have been received and approved by the Debtor.

## ARTICLE XII

## EFFECTS OF PLAN CONFIRMATION

12.1 <u>Satisfaction of Claims</u>.   The treatment of and consideration to be received by holders of Allowed Claims pursuant to this Plan shall be in full satisfaction, settlement, discharge, and release of such holders' respective Claims against the Estate.

12.2    <u>Injunction</u>. Provided that the Effective Date occurs, the entry of the Confirmation Order shall and shall be deemed to permanently enjoin all Persons that have held, currently hold, or may hold a Claim or other debt or liability, directly or indirectly, against the Debtor, Reorganized Debtor, and the Estate, with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtor, Reorganized Debtor, or the Estate, with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly against any obligation of the Debtor, Reorganized Debtor, or the Estate, with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; and (v) proceeding in any manner in any place whatsoever against the Debtor, Reorganized Debtor, or the Estate, with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan.

12.3    <u>No Liability for Solicitation or Participation</u>. Pursuant to Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

12.4    <u>Term of Injunctions and Stays</u>.  Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Case pursuant to Sections 105 or 362 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

12.5    <u>Release of Liens</u>.  Except as otherwise provided in this Plan or the Confirmation Order, all Liens, security interests, deeds of trust, or mortgages against property of the Estate shall and shall be deemed to be released, terminated and nullified.

**ARTICLE XIII**

**MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN**

13.1    <u>Modification of this Plan</u>.  The Debtor may alter, amend or modify this Plan under Section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.   After the Confirmation Date and prior to the substantial consummation of this Plan, any party in interest in the Bankruptcy Case may, so long as the treatment of holders of Claims under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of this Plan; provided, however, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

13.2    <u>Revocation or Withdrawal of this Plan</u>.  The Debtor reserves the right to modify, revoke or withdraw this Plan at any time prior to the Confirmation Date.   If the Debtor revokes or withdraws this Plan prior to the Confirmation or Effective Date, this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release

of any claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.  At any time prior to the Confirmation Date, the Debtor may withdraw his support for the Plan.

## ARTICLE XIV

## RETENTION OF JURISDICTION

14.1    Jurisdiction of Bankruptcy Court.  Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction:

(i)     To hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

(ii)    To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim  before a particular date;

(iii)   To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided in the Plan.

(iv)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(v)     To construe and to take any action to enforce this Plan and the Confirmation Order;

(vi)    To issue such orders as may be necessary for the implementation, execution and consummation of this Plan and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation

Order;

(vii)   To hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(viii)   To hear and determine all applications for Professional Claims;

(ix)   To hear and determine other issues presented or arising under this Plan, and disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with this Plan;

(x)   To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xi)   To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

(xii)   To enter the Final Decree; and

(xiii)   To hear and determine any action concerning the recovery and liquidation of the Estate assets, wherever located, including, without limitation, litigation to liquidate and recover Estate assets that consist of claims and causes of action against third parties; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtor and the Estate including, without limitation, matters concerning federal, state and local taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

14.2   Failure of Bankruptcy Court to Exercise Jurisdiction.   If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction,

over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth above in Section 14.1 of this Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

15.1    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to Section 1128 of the Bankruptcy Code, shall be paid by the Estate on or before the Effective Date. The Estate shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. ' 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this chapter 11 case, or enters an order either converting this case to a case under chapter 7 or dismissing this case.  After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Reorganized Debtor for each month, or portion thereof, that this chapter 11 case remains open in a format prescribed by the United States Trustee.

15.2    <u>Retention of Actions and Defenses</u>  The Reorganized Debtor shall have and retain all claims, rights, defenses, privileges, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estate within the meaning of Section 541 of the Bankruptcy Code as all claims, rights, defenses, offsets, recoupments, and causes of action arising under Chapter 5 of the Bankruptcy Code (including, without limitation, any avoidance actions) with respect to any person, unless otherwise compromised, settled and released, shall be and hereby are for the benefit

-29-

of the holders of Allowed Unsecured Claims, and shall be and hereby are deemed to be part of the Remaining Assets. Except as otherwise set forth in Sections 7.1 and 10.1.2 of this Plan, prosecution and settlement of such claims, rights, defenses, and causes of action shall be the sole responsibility of the Debtor or, after the Effective Date, the Reorganized Debtor who shall pursue those claims, rights, defenses, and causes of action, as appropriate, in accordance with what is in the best interests, and for the benefit of the Estate.

15.3    No Admissions.    Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any classification of any Claim.

15.4    Plan Controls. To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.

15.5    Governing Law.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

15.6    Successors and Assigns.  The rights, benefits and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

15.7    Severability.    Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim, the Bankruptcy Court and the Debtor shall have

-30-

the power to alter and modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision. Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect.

15.8    <u>Notices and Distributions</u>. On and after the Effective Date, all notices, requests and distributions to a holder of a Claim shall be sent to the last known address of (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Expense Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtor. Any holder of a Claim may designate another address for the purposes of this Section by providing the Debtor written notice of such address, which notice will be effective upon receipt by the Debtor of the written designation.

15.9    <u>Unclaimed Property</u>. If any property distributed by the Estate remains unclaimed for a period of two (2) years after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Reorganized Debtor. At least once a year until the Bankruptcy Case is closed, the Reorganized Debtor shall file with the Bankruptcy Court a schedule that identifies the name and last-known address of holders of all unclaimed distributions. The use of regular mail, postage prepaid, to the last known address of a holder of a Claim shall constitute delivery for purposes of this Section.

15.10   <u>Binding Effect</u>.  The Plan shall be binding on and inure to the benefit of the holders of Claims (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns.

15.11   <u>Withholding and Reporting</u>.  In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Estate shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding and reporting requirements.  Notwithstanding anything herein to the contrary, in calculating and making the payments due to Allowed Claims hereunder, the Reorganized Debtor shall be authorized to deduct from such payments any necessary withholding amount; and to the extent that an Allowed Claim was ever a Disputed Claim, any Tax Distribution Amount paid from the Estate, attributable to such Claim, while it was a Disputed Claim.

15.12   <u>Other Documents And Actions</u>.  The Debtor and the Reorganized Debtor may execute such documents and take such other action, as is reasonable, necessary, or appropriate to effectuate the transactions provided for in this Plan.

15.13   <u>Default</u>.  In the event the Debtor defaults in the due and timely performance of any material nonmonetary action or in the payment of amounts provided to be made herein, then any aggrieved creditor or party in interest shall provide the Debtor with a written notice of such default. The Debtor shall then have (thirty) 30 days in which to respond in writing to the alleged default and to propose or make a cure of any such alleged default.  The aggrieved party shall then have a period of fifteen (15) days to either accept such response and cure (or alternative proposal) or after such date may file with the Bankruptcy Court a motion in accordance with the local rules that is served on the Debtor, the Reorganized Debtor, the United States Trustee, and any other

creditor or party in interest seeking court order that a default has occurred and thus seeking relief

to exercise remedies under applicable law with regard to the collateral securing the obligations

under the Plan. This shall be the exclusive remedy available to creditors under the Plan.

## CONFIRMATION REQUEST

Giles-Jordan, Inc. hereby requests confirmation of this Plan pursuant to Section 1129(a)

of the Bankruptcy Code or, in the event that this Plan is not accepted by each of those Classes of

Claims and Interests entitled to vote, Section 1129(b) of the Bankruptcy Code.

DATED this 25th day of April, 2015

H. MICHAEL GILES
President
GILES-JORDAN, INC.

OPPEL & GOLDBERG, P.L.L.C.

*/s/ Jeffrey Wells Oppel*
Jeffrey W. Oppel
State Bar No. 15291800
1010 Lamar, Suite 1420
Houston, Texas 77002
713-659-9200
713-659-9300 Fax

ATTORNEYS FOR THE DEBTOR

-33-